IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAULA J. ANDERSON,

       Plaintiff,

       v.

HIBU, INC., a Delaware Corporation, fka
YELLOWBOOK INC.,

       Defendant.

_____

Civ. No. 6:13-cv-00840-MC

OPINION AND ORDER

MCSHANE, Judge:

Between June 2010 and March 2011, plaintiff Paula Anderson worked as a media consultant for Hibu Inc. (formerly Yellowbook Inc.). In September 2010, plaintiff injured her wrist during a sales call. With defendant's assistance, plaintiff filed a workers' compensation claim which was subsequently accepted. Because plaintiff's wrist did not improve, she underwent surgery on January 18, 2011. Following her surgery, plaintiff was placed on leave of absence. After exhausting the leave period, plaintiff was terminated in accordance with company policy on March 1, 2011. Pursuant to termination, plaintiff received a telephone call and letter inviting her to seek reemployment on a competitive basis. Plaintiff was released to full duty in June 2011, but did not seek reinstatement with defendant.

This Court is asked to consider: (1) whether defendant retaliated against plaintiff under ORS § 659A.040(1) because plaintiff invoked the workers' compensation system and (2) whether plaintiff's right to reinstatement under ORS § 659A.043 was violated because defendant made it known to her that reinstatement would not be considered and that an actual demand

1 – OPINION AND ORDER

would therefore be futile. Because (1) plaintiff's allegations of adverse employment action do not meet her burden under *McDonnell Douglas* and (2) plaintiff's termination correspondence excused her from making a demand for reinstatement under ORS § 659A.043, this Court finds that defendant did not violate ORS § 659A.040(1), but did violate ORS § 659A.043. Thus, plaintiff's motion for partial summary judgment, ECF No. 12, is GRANTED IN PART and DENIED IN PART, and defendant's motion for summary judgment, ECF No. 16, is GRANTED IN PART and DENIED IN PART.

## PROCEDURAL AND FACTUAL BACKGROUND

This action arises out of alleged retaliatory action and violation of plaintiff's reinstatement rights. Plaintiff began working for defendant as a media consultant in June 2010. Pl.'s Decl. of Counsel 1, 25, ECF No. 13-1. On September 28, 2010, plaintiff tripped and injured her wrist while making a sales call. Decl. of Paula J. Anderson 2, ECF No. 14. Plaintiff reported her injury to her supervisor, Nathan Laprier, that same day. Decl. of Sarah E. Ames 7–8, ECF No. 19-1. Laprier assisted plaintiff in filing her workers' compensation claim. *Id*. at 8. Defendant's workers' compensation claim administrator, Gallagher Basset, sent plaintiff an "INITIAL NOTICE OF CLAIM ACCEPTANCE" dated November 4, 2010, for a "Non-Disabling Left wrist sprain." *Id*. at 41, 62–65. This initial notice included a "Notice to Worker" packet, which notified plaintiff of her "Employment reinstatement rights and responsibilities."[1] *Id*. at 63.

---

[1] This "Notice to Worker" packet provided, in relevant part:

> In most cases, the Oregon Civil Rights Law requires companies with more than 20 employees to reinstate a permanent worker when the worker's doctor or authorized nurse practitioner has approved return to regular work or other suitable work. You must be returned to your job-at-injury upon your request, unless that job no longer exists, that job is unavailable, or your disabilities prevent you from doing your former duties. A job is

Plaintiff continued to perform her job duties after the September injury. Pl.'s Decl. of Counsel 27, ECF No. 13-1. However, when plaintiff's wrist injury did not improve over time, she scheduled surgery for January 18, 2011. Decl. of Paula J. Anderson 2, ECF No. 14. Plaintiff notified defendant's Leave of Absence Coordinator, Julie Cunningham, of the scheduled surgery via email on December 17, 2010. *Id.*; Pl.'s Decl. of Counsel 35, ECF No. 13-1. On January 18, 2011, plaintiff was taken off work by her physician and underwent wrist surgery. Pl.'s Decl. of Counsel 26, ECF No. 13-1. After surgery, plaintiff was placed on leave of absence and provided with an informational letter (Notice of Eligibility and Rights & Responsibilities) regarding defendant's leave of absence policies. Decl. of Paula J. Anderson 2, ECF No. 14; *see also* Pl.'s Decl. of Counsel 14, ECF No. 13-1.

Pursuant to defendant's leave of absence policy, an employee not eligible under the Family and Medical Leave Act (FMLA) was entitled to a leave period dependent upon his or her tenure. Decl. of Sarah E. Ames 5, ECF No. 19-2. If an employee exhausted this leave period without a physician release to return to work, that employee was terminated. *Id.* at 2. Plaintiff, in her informational letter, was informed that her non-FMLA leave period expired on January 31, 2011. Pl.'s Decl. of Counsel 14, ECF No. 13-1. Plaintiff's leave period was subsequently extended to February 28, 2011. *See id.* at 22.

---

"available" even if filled by a replacement worker during your absence. If your job is not available, you must be returned to any other existing position that is vacant and suitable. A certificate from your doctor or authorized nurse practitioner stating that you can return to your regular job or other suitable job is sufficient evidence that you are able to do the job. However, re-employment and reinstatement rights may be limited by seniority rights and other employment restrictions contained in a valid collective bargaining agreement between the employer and an employee representative.

Within five days after your doctor or authorized nurse practitioner notified the insurer that you are released to return to work, the insurer must inform you about the opportunity to request work with your employer-at-injury.

Decl. of Sarah E. Ames 63, ECF No. 19-1.

During plaintiff's leave period, defendant's Claims Representative, Dana Schultz, sent plaintiff a "MODIFIED NOTICE OF CLAIM ACCEPTANCE" dated February 1, 2011. This modified notice reclassified plaintiff's wrist injury as "a disabling: Left wrist sprain and TFCC tear." Decl. of Sarah E. Ames 66, ECF No. 19-1. Plaintiff's modified notice of claim acceptance included the same "Notice to Worker" packet provided in her initial notice of claim acceptance. *Id*.; *see also supra* note 1.

On March 1, 2011, Cunningham, via telephone, terminated plaintiff because she had exhausted her leave period. Pl.'s Decl. of Counsel 16, ECF No. 13-1. Cunningham also sent plaintiff a written termination notice, dated March 1, 2011. *Id*. at 22. That termination notice provided, in relevant part:

> As we discussed previously, because you are unable to return to work and the 6 week leave granted to you expired on February 28, 2011, your employment with Yellowbook has ended on March 1, 2011. If you are participating in our health or dental insurance plan, this coverage has also been terminated as of March 1, 2011. [Consolidated Omnibus Budget Reconciliation Act] information will be mailed to you shortly. Any additional payments due will be paid out in the form of a live check mailed directly to your address above.
>
> Please return any Yellowbook materials (name badge, security card, keys, FOB, Tablet) to your manager immediately.
>
> If you are interested in re-employment once your doctor has released you to work, you may contact Tina Siebal at . . . or submit an application/resume . . . .
> You will be considered, along with other external applicants, for any open positions that you are qualified for at the time of your application. In order to be considered for rehire, you must be in good standing with Yellowbook . . . .

Pl.'s Decl. of Counsel 22, ECF No. 13-1. This written termination notice was consistent with Cunningham's telephone conversation with plaintiff. *See id*. at 50 ("I don't remember communicating with her regarding reinstating if she separated."); Decl. of Paula J. Anderson 2,

4 – OPINION AND ORDER

ECF No. 14 (indicating that Cunningham informed plaintiff that plaintiff would be considered along with other external applicants if she applied for employment).

In a letter dated March 2, 2014, Angie Corcoran, defendant's Director of Benefits & Human Resources Systems, reminded plaintiff of her confidentiality obligations.[2] *See* Pl.'s Decl. of Counsel 19, ECF No. 13-1. Plaintiff's client accounts were then reassigned to other employees. *Id*. at 18.

On or about June 14, 2011, plaintiff became medically stationary and was released to full duty. *See* Pl.'s Decl. of Counsel 4, ECF No. 13-1; *but see* Pl.'s Decl. of Counsel 26, ECF No. 13-1 (indicating that plaintiff was released to work on June 6, 2011). Plaintiff did not request reinstatement.

On July 21, 2011, Schultz sent plaintiff two documents, an "Updated Notice of Claim Acceptance at Closure," Decl. of Sarah E. Ames 59–61, ECF No. 19-1, and a "Notice of Closure," Pl.'s Decl. of Counsel 4–6, ECF No. 13-1. The first document, like plaintiff's two previous notices of claim acceptance, included a "Notice to Worker" packet. *See* Decl. of Sarah E. Ames 59–61, ECF No. 19-1; *see also supra* note 1.

## STANDARD OF REVIEW

---

[2] That letter provided, in relevant part:

> In connection with your employment with Yellowbook, you signed an Employee Agreement that contains agreements by you to maintain the confidentiality of Yellowbook's trade secrets and other confidential and proprietary information, not to solicit customers whose accounts were serviced or managed by you while you were employed at Yellowbook, and not to solicit Yellowbook employees.
>
> This letter is to remind you that your obligation under the Employee Agreement continue after your employment with Yellowbook, for the time periods stated in the Employee Agreement.
>
> Best wishes to you on your future endeavors.

Pl.'s Decl. of Counsel 19, ECF No. 13-1.

5 – OPINION AND ORDER

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## DISCUSSION

Plaintiff, in her complaint, contends that: (1) defendant retaliated against her under ORS § 659A.040 because she filed for workers' compensation and (2) defendant violated her right to reinstatement under ORS § 659A.043 by making it known that her reinstatement would not be considered and that an actual demand would therefore be futile. Pl.'s Compl. 7–8, ECF No. 1-1. Plaintiff and defendant move for summary judgment as to both claims.

### I. ORS § 659A.040 (Workers' Compensation Retaliation)

Under ORS § 659A.040(1), "[i]t is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws." To establish a prima facie case under ORS § 659A.040(1), a plaintiff must show: "(1) that the

6 – OPINION AND ORDER

plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the tenure or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because he or she invoked the workers' compensation system." *Kirkwood v. W. Hyway Oil Co.*, 204 Or. App. 287, 293 (2006) (citation and internal quotation marks omitted). A plaintiff may rely on circumstantial evidence in establishing her prima facie case. *See, e.g.*, *Herbert v. Altimeter, Inc.*, 230 Or. App. 715, 725 (2009).

The parties dispute whether the *McDonnell Douglas* burden-shifting framework applies to plaintiff's claim under ORS § 659A.040(1). In Oregon, various courts have explicitly rejected application of the *McDonnell Douglas* framework. *See, e.g.*, *Williams v. Freightliner, LLC*, 196 Or. App. 83, 90 (2004) ("[T]he trial court applied a burden-shifting analysis. And as the authorities set out above make clear, that was error."); *Arnold v. Pfizer, Inc.*, 970 F. Supp. 2d 1106, 1142–43 (D. Or. 2013) (declining to apply *McDonnell Douglas*). However, as discussed at length in *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001) (citation and internal quotation marks omitted), a court sitting in diversity jurisdiction applies "state substantive law and federal procedural law." The Ninth Circuit, in declining to apply "Oregon's 'prima facie only' rule," held that "the *McDonnell Douglas* burden-shifting scheme is federal procedural law." *Snead*, 237 F.3d at 1090, 1092; *see also* *Grassmueck v. Johnson Controls Battery Grp., Inc.*, Civil No. 06-526-ST, 2007 WL 1989579, at *7 (D. Or. July 2, 2007) (applying *McDonnell Douglas*). Thus, this Court, sitting in diversity jurisdiction, applies the *McDonnell Douglas* framework.

Under the *McDonnell Douglas* framework, if a plaintiff meets his or her initial prima facie burden identified above, "[t]he burden then must shift to the employer to articulate some

legitimate, nondiscriminatory reason for the" adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If defendant meets this burden, then the burden returns to plaintiff to show by a preponderance of the evidence that the alleged legitimate, nondiscriminatory reason for the adverse employment action is merely a pretext for discrimination. *Id.* at 804; *see also Ballard v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, Cv. No. 09–873–PK, 2011 WL 1337090, at *14 (D. Or. Apr. 7, 2011).

As to plaintiff's prima facie burden, the parties do not dispute that plaintiff invoked the workers' compensation system. Mem. in Supp. of Pl.'s Mot. Partial Summ. J. 8, ECF No. 15. However, the parties do contest whether plaintiff met her burden under the second and third elements.

As to the second element, neither party interprets "with respect to hire or tenure or any term or condition of employment." This Court, in reliance on *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–67 (2006), finds that ORS § 659A.040(1) is more akin to an anti-retaliation provision than a substantive anti-discrimination provision. *See Elek v. Safeway, Inc.*, Civil No. 07– 6219–TC, 2009 WL 483186, at *3–4, 7 (D. Or. Feb. 25, 2009) (utilizing the broader anti-retaliation definition of "adverse action" identified in *Burlington N. & Santa Fe Ry. Co.*). This Court is aware of at least one decision in this district holding otherwise. *See Willer v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, No. 07-CV-303-BR, 2008 WL 3871744, at *6–8 (D. Or. Aug. 19, 2008) (declining to interpret ORS § 659A.040(1) broadly as an anti-retaliation provision). However, ORS § 659A.040(1) "seeks to prevent harm to individuals based on what they do, *i.e.*, *their conduct*," not based "on who they are, *i.e.*, their status." *Burlington N. & Santa*

8 – OPINION AND ORDER

*Fe Ry. Co.*, 548 U.S. at 63 (emphasis added).[3] As a result, under this broader interpretation, plaintiff must "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from" applying for benefits or invoking the procedures provided for in ORS chapter 656. *Id.* at 68; *see also Herbert*, 230 Or. at 722 (noting that a plaintiff's prima facie burden "is so minimal that it is virtually impervious to a motion based on evidentiary sufficiency" (citation and internal quotation marks omitted)).

As to the third element, plaintiff must demonstrate that the defendant discriminated against her with respect to tenure or any term or condition of employment *because she invoked the workers' compensation system*. Put differently, plaintiff's invocation "of the workers' compensation system was a *substantial factor* in defendant's" adverse employment actions. *Herbert*, 230 Or. App. at 726 (emphasis added). "[T]he employer's wrongful purpose must have been "a factor that made a difference" in the adverse employment action. *Estes v. Lewis & Clark Coll.*, 152 Or. App. 372, 381 (1998) (citation and internal quotation marks omitted).

Plaintiff asserts seven uncontested acts of alleged adverse employment action, including: (1) plaintiff was locked out of Defendant's email system beginning her first day of administrative leave, January 18, 2011; (2) plaintiff was notified of defendant's leave of absence policy *after* undergoing her wrist surgery; (3) plaintiff received workers' compensation specific leave of absence paperwork; (4) plaintiff was terminated on March 1, 2011; (5) plaintiff received termination correspondence (letter and telephone call) from Cunningham, alleged to be legally

---

[3] *See also Hamlin v. Hampton Lumber Mills, Inc.*, 349 Or. 526, 530 n.2 (2011) (identifying plaintiff's claim for relief against defendant as "*retaliating* against him for filing a workers' compensation claim (ORS 659A.040)" (emphasis added)); *Petock v. Asante*, 237 Or. App. 113, 116 n. 1 (2010) (describing plaintiff's claim as "*retaliatory* discharge" (emphasis added)); *Herbert*, 230 Or. App. at 725 (discussing "plaintiff's count concerning workers' compensation *retaliation*." (emphasis added) (citation omitted)).

inaccurate; (6) plaintiff's insurance was terminated; and (7) defendant indicated that plaintiff had "voluntarily quit" on paperwork submitted to the Oregon Employment Department (OED). *See* Mem. in Supp. of Pl.'s Mot. Partial Summ. J. 8–12, ECF No. 15.[4]

First, this Court finds that plaintiff's allegation of email lock out during her leave of absence likely does not meet her prima facie burden. However, even to the extent that plaintiff has met her burden; defendant has proffered a legitimate, nondiscriminatory reason for the lock out. Defendant blocked plaintiff's access pursuant to standard policy for employees on unpaid leave of absence. Mem. in Supp. of Def.'s Mot. Summ. J. 4 n. 4, ECF No. 17. Plaintiff offers no argument in response and has failed to demonstrate that this policy was merely a pretext for discrimination. *See, e.g.*, *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("To avoid summary judgment, [plaintiff] must do more than establish a prima facie case . . . . She must produce specific, substantial evidence of pretext.").

Second, as to receiving leave of absence information *after* undergoing surgery, this Court is not persuaded that plaintiff has met her prima facie burden. Although defendant had provided such information in the past to some employees, *see e.g.*, Pl.'s Decl. of Counsel 51, ECF No. 13-1, there is no indication that a reasonable worker would have been dissuaded from invoking workers' compensation protections because they received such information after undergoing treatment. Plaintiff did not recover from her injury and needed corrective surgery. Decl. of Pl. 2, ECF No. 14. Even if plaintiff had scheduled her surgery one or two months later, she would have remained subject to defendant's lawful termination policy. Moreover, plaintiff failed to articulate

---

[4] This Court declines to consider plaintiff's allegation that she "received information that one of Defendant's employees was reporting to customers that she was let go because she 'did not do her job very,' and 'he was cleaning up her messes.'" Mem. in Supp. of Pl.'s Mot. Partial Summ. J. 11, ECF No. 15. This allegation, representing hearsay within hearsay, is offered to prove the truth of the matter asserted and is inadmissible. *See* FRE 801–802, 805.

a connection between the timing of this correspondence and defendant's alleged wrongful purpose. Plaintiff's leave of absence period was extended to six weeks despite her limited tenure. *See, e.g.*, Pl.'s Decl. of Counsel 22, ECF No. 13-1.

Third, as to defendant's workers' compensation paperwork, this Court is not persuaded that use of such paperwork constitutes an adverse employment action. The only substantive difference between this paperwork and non-work related injury paperwork is that this paperwork excludes information regarding short-term disability contact information. Reply in Supp. of Def.'s Mot. Summ. J. 3 n. 2, ECF No. 28 (citing Decl. of Sarah E. Ames 2, ECF No. 23-2). This short-term disability contact information is omitted because an employee receiving workers' compensation payments is not eligible for short-term disability payments. *Id.*; *see also Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003) ("In some cases, the would-be retaliatory act is so insignificant that it does not deter the exercise" of protected rights.).

Fourth, as to plaintiff's termination, this act clearly constitutes an adverse employment action. *See, e.g., Herbert*, 230 Or. App. at 725 ("[A] jury could reasonably have found that plaintiff's decision to report an unsafe work environment was a substantial factor in her termination."); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (noting that termination is an adverse employment action). Plaintiff was terminated approximately six months after filing her workers' compensation claim. However, plaintiff's workers' compensation claim did not close until *after* her termination. Pl.'s Decl. of Counsel 4–6, ECF No. 13-1. This temporal relationship is sufficient to satisfy plaintiff's third element under her prima facie burden. *See, e.g., Kirkwood*, 204 Or. App. at 294 (reversing summary judgment when plaintiff's claim closed *after* termination); *Villiarimo v. Aloha I. Air, Inc.*, 281 F.3d 1054,

11 – OPINION AND ORDER

1065 (9th Cir. 2002) ("[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.").

Defendant, in response, argues that plaintiff was terminated pursuant to a neutral policy consistent with OAR 839-006-0150.[5] Defendant's policy "was applicable to all employees, regardless of whether the employee was on leave for a work-related injury or some other reason." Mem. in Supp. of Def.'s Mot. Summ. J. 8, ECF No. 17 (citing Decl. of Sarah E. Ames 2–3, ECF No. 19-2). This Court, consistent with *Manesh v. Tokyo Electron Am.*, Civil No. 06-233-KI, 2007 WL 539474, at *4 (D. Or. Feb. 13, 2007), is not persuaded that an employer is precluded from terminating an at-will employee because that employee has reinstatement rights. Thus, defendant's neutral policy constitutes a legitimate, nondiscriminatory reason for plaintiff's termination.

Plaintiff, to meet her rebuttal burden, argues that the surrounding circumstances (i.e., allegations three, five, and seven above) demonstrate that this neutral policy is mere pretext. Mem. of Law in Supp. of Pl.'s Resp. to Def.'s Mot. Summ. J. 12–13, ECF No. 21. As indicated above and below, this Court considers allegation three, defendant's workers' compensation paperwork, insignificant, and allegation seven, defendant's characterization of plaintiff's termination to OED, lawful. As to allegation five discussed below, plaintiff's termination correspondence is more appropriately assessed under ORS § 659A.043. Even if considered in combination with plaintiff's other asserted facts, these allegations do not show by a

---

[5] OAR 839-006-0150 provides, in relevant part:

> (1) An injured worker does not lose the right to reinstatement or reemployment under ORS 659A.043 or 659A.046 if:
>
> > (a) An employer discharges all employees who are off the job for a certain amount of time and discharges the injured worker under this policy for time off covered by time-loss compensation or for absences medically certifiably by the attending physician or authorized nurse practitioner in connection with the compensable injury.

preponderance of the evidence that the alleged legitimate, nondiscriminatory reason for the adverse employment action is merely a pretext for discrimination. *See Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003) ("Under Ninth Circuit law, circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment.").

Fifth, as to plaintiff's termination correspondence, the parties dispute whether this correspondence should be considered under ORS § 659A.040 in addition to ORS § 659A.043. In *Palmer v. Cent. Oregon Irrigation Dist.*, 91 Or. App. 132, 136–37 (1988), the Oregon Appellate Court discussed the relationship between ORS § 659.410, renumbered ORS § 659A.109, and ORS § 659.415, renumbered ORS § 659A.043. The Court found that "failure to reinstate a worker who has sought benefits can be discriminatory, even if the refusal to reinstate does not violate ORS § 659.415." *Palmer*, 91 Or. App. at 136–37. ORS § 659A.040(1), like ORS § 659A.109, prohibits "discrimination" with "respect to hire or tenure or condition of employment because" a person has applied for benefits or invoked Oregon statutory procedures. Thus, this Court considers plaintiff's correspondence correspondence under ORS § 659A.040.

Plaintiff contends that "[t]his communication in and of itself . . . violates ORS 659A.040." Mem. in Supp. of Pl.'s Mot. Partial Summ. J. 10, ECF No. 15. This Court is not persuaded. *See, e.g.*, *Palmer*, 91 Or. App. at 136 ("[A] violation of the statute does not conclusively prove discrimination."). Although this communication may constitute an adverse employment action, plaintiff need also demonstrate that defendant issued this correspondence *because* plaintiff invoked the workers' compensation system. Plaintiff makes no argument under element three, and this Court declines to articulate arguments on plaintiff's behalf. Plaintiff herself believed that she would be considered with all other applicants if she applied on a competitive basis. *See* Decl. of Sarah E. Ames 24–25, ECF No. 19-1. Thus, this correspondence

13 – OPINION AND ORDER

is more accurately assessed under ORS § 659A.043 as a misstatement of plaintiff's reinstatement rights, not an adverse employment action motivated by defendant's wrongful purpose. *See Estes*, 152 Or. App. at 382 ("[T]he record simply does not support an inference that [defendant] was motivated to retaliate against plaintiff because of her protected activities."); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").

Sixth, as to plaintiff's insurance termination, this employment action is captured by this Court's previous analysis of plaintiff's termination. Because defendant lawfully terminated plaintiff, defendant was also allowed to discontinue plaintiff's employment-based insurance.

Seventh, defendant reported to the OED that "[t]he claimant is considered to have voluntarily quit after failing to return from an approved leave of absence." Decl. of Counsel 23, ECF No. 13-1. Plaintiff contends that this paperwork "misrepresents [p]laintiff's employment status" and is "an additional adverse action." Mem. in Supp. of Pl.'s Mot. Partial Summ. J. 10, ECF No. 15. This Court is not persuaded. If defendant can lawfully terminate plaintiff because she exhausted her leave of absence, defendant can also inform the Oregon Employment Department that it did so.[6]

Accordingly, having considered plaintiff's various allegations of adverse employment action, defendant is GRANTED summary judgment on plaintiff's claim under ORS § 659A.040.

## II. ORS § 659A.043 (Reinstatement)

---

[6] Plaintiff cites ORS § 657.176 for the proposition that defendant created a "heightened standard for [plaintiff] to receive unemployment benefits." Mem. of Law in Supp. of Pl.'s Resp. to Def.'s Mot. Summ. J. 11, ECF No. 21. However, to be subject to a heightened standard, an authorized representative designated by the Director of OED must find that the claimant "voluntarily left work without good cause." ORS § 657.176. It is the OED (e.g., Employment Appeals Board) that makes this legal determination, not the employer. *See, e.g.*, *Beauchamp v. Oregon Emp't Dep't*, 246 Or. App. 494 (2011).

14 – OPINION AND ORDER

The parties dispute whether plaintiff's right to reinstatement under ORS § 659A.043[7] terminated when she failed to request reinstatement. *See, e.g.*, Mem. in Supp. of Pl.'s Mot. Partial Summ. J. 13–14, ECF No. 15; Mem. in Supp. of Def.'s Mot. Summ. J. 8–15, ECF No. 17. This issue before this Court is whether, consistent with OAR 839-006-0130(7), defendant "made it known to [plaintiff] that reinstatement [would] not be considered . . . and that an actual demand would therefore be futile."

Plaintiff, primarily in reliance on termination correspondence (i.e., termination letter and telephone call) with Cunningham on March 1, 2011, contends that a request for reinstatement would have been "futile" because defendant "made it known that Plaintiff would have to compete for open positions." Mem. in Supp. of Pl.'s Mot. Partial Summ. J. 14, ECF No. 15. Defendant, in response and within its own motion, contends that these communications, even if combined with other factors, cannot be reasonably interpreted to rise to the level of futility. *See* Mem. in Supp. of Def.'s Mot. Summ. J. 12, ECF No. 17. Because "futile" and "reinstatement" are not defined in the statute or administrative rules, this Court turns to Oregon rules of statutory interpretation. *See Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010) (finding

---

[7] ORS § 659A.043 provides, in relevant part:

> (3) Notwithstanding subsection (1) of this section:
>
> > (a) The right to reinstatement to the worker's former position under this section terminates when whichever of the following events first occurs:
> >
> > . . .
> >
> > (E) Seven days elapse from the date that the worker is notified by the insurer or self-insured employer by certified mail that the worker's attending physician or a nurse practitioner authorized to provide compensable medical services under ORS 656.245 has released the worker for employment unless the worker requests reinstatement within that time period.

that this Court's role is "to interpret the law as would the [Oregon] Supreme Court." (citation and internal quotation marks omitted)).

In *State v. Gaines*, 346 Or. 160, 171–72 (2009), the Oregon Supreme Court established a three-step methodology for determining legislative intent. First, this Court examines the text and context. *Id*. at 171. Second, this Court may examine the statute's legislative history. *Id*. at 171. Third, this Court "may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty" if the legislative intent remains unclear after the first two steps. *Id*.

"[T]he text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *Portland Gen. Elec. Co. v. Bureau of Labor & Indus.*, 317 Or. 606, 611 (1993) (citations omitted), *overruled in part by Gaines*, 346 Or. at 171– 72. As indicated above, "futile" is not defined. Defendant, in reliance on the Oxford Online Dictionary (2014), defines "futile" as "incapable of producing any useful result; pointless." Mem. in Supp. of Def.'s Mot. Summ. J. 11, ECF No. 17. Plaintiff does not contest the accuracy of this definition, but argues that "futile" need be read in light of the entire subsection. Because defendant's definition of "futile" is reasonable, this Court adopts it. *See Portland Gen. Elec. Co.*, 317 Or. at 611 ("[W]ords of common usage typically should be given their plain, natural, and ordinary meaning." (citation omitted)). As to the broader subsection, OAR 839-006-0130(7) provides:

> (7) When the injured worker has not made demand for reinstatement to the former position because *the employer has made it known to the worker that reinstatement will not be considered*, even if a suitable position is vacant, *and that an actual demand would therefore be futile*, the division will deem the worker to have made timely demand.

(emphasis added). Thus, OAR 839-006-0130(7) requires a plaintiff to demonstrate that: (1) "the employer has made it known" to plaintiff that reinstatement would not be considered and (2) "that an actual demand would therefore be futile."

The term "reinstatement," like the term "futile," is not defined in the statute or administrative rules. Plaintiff, in reliance on the Merriam-Webster Online Dictionary (2014) and the Oxford Online Dictionary (2014), defines "reinstate" as "to put (someone) back in a job or position that had been taken away" or "restore (someone or something) to their former position or condition." Mem. of Law in Supp. of Pl.'s Resp. to Def.'s Mot. Summ. J. 15, ECF No. 21. Plaintiff's definition is limited to the extent that it is inconsistent with Oregon law. *See, e.g.*, ORS § 659A.043(1) ("If the former position is not available, the worker shall be reinstated in any *other existing position that is vacant and suitable*." (emphasis added)). However, as noted by the parties, it is undisputed that plaintiff's former position existed and was available. *See, e.g.*, Mem. in Supp. of Pl.'s Mot. Partial Summ. J. 13, ECF No. 15. Collectively, these definitions require plaintiff to demonstrate that defendant made it known to her that her right to be restored to her former (available) position would not be considered and therefore, an actual demand would be incapable of producing any useful result; pointless.

In addition to considering the text "at the first level of analysis, the court considers the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes." *Portland Gen. Elec. Co.*, 317 Or. at 611. In *Williams v. Waterway Terminals Co.*, 298 Or. 506, 510 (1985), the Oregon Supreme Court discussed the context and purpose of ORS § 659.415(1), the predecessor to ORS § 659A.043. The Court found:

> ORS 659.415(1) is phrased in mandatory terms: The worker "shall be reinstated." This court has previously noted that ORS 659.415, together with

ORS 659.410,[8] is an integral part of the legislative scheme to prohibit employment discrimination on the basis of physical or mental handicap. As we stated in *Shaw v. Doyle Milling Co.*, 297 Or. 251, 255, 683 P.2d 82 (1984):

> "The main purpose of ORS 659.415 is to guarantee that an employer shall not discriminate against a disabled worker for exercising the worker's rights under the Workers' Compensation Law. This statute is but one of a set of statutes reflecting the legislature's concern to prohibit employment discrimination on the basis of handicap. * * * "

*Williams*, 298 Or. at 510 (citation omitted). Having briefly assessed the "text and context," this Court now looks to the facts.

Plaintiff, in making her "futile" argument, relies on five uncontested factual events, including: (1) she was informed of defendant's leave of absence policy *after* undergoing her wrist surgery; (2) her telephone conversation with Cunningham on March 1, 2011; (3) her termination letter, dated March 1, 2011; (4) her letter outlining her continued confidentiality obligations, dated March 2, 2011; and (5) defendant indicated that plaintiff had "voluntarily quit" on paperwork submitted to the OED. Mem. in Supp. of Pl.'s Mot. Partial Summ. J. 14–15, ECF No. 15; *see also* supra note 4 (declining to consider plaintiff's hearsay allegations). Because this Court finds that only plaintiff's March 1 correspondence, i.e., numbers two and three above, rises to the level of "futile," this Court's inquiry will focus on that correspondence.[9]

Plaintiff's termination letter, dated March 1, 2011, informed her that if she was interested in reemployment after medical release, she may contact Tina Siebal or

---

[8] ORS § 659.410 was renumbered as ORS § 659A.109.

[9] This Court briefly notes that the other factual events are relatively innocuous and provide little, if no support to plaintiff's argument under OAR 839-006-0130(7). *See, e.g.*, *LaFord v. Kinko's, Inc.*, No. CV–03–181–HU, 2004 WL 1774531, at *3, 7 (D. Or. Aug. 9, 2004) (granting defendant summary judgment where plaintiff did not demand reinstatement because defendant hired another Commercial Business Representative (CBR) to perform plaintiff's duties and plaintiff saw that individual sitting at his desk).

submit an application, and "be considered, *along with other external applicants*, for any open positions that you are qualified for at the time of your application." Pl.'s Decl. of Counsel 22, ECF No. 13-1 (emphasis added). Defendant, in response, argues that even if this letter creates "ambiguity," such ambiguity does not rise to the level of "futile." Mem. in Supp. of Def.'s Mot. Summ. J. 12, ECF No. 17. Defendant further directs this Court's attention to the three claim acceptance notices sent on November 4, 2010, February 1, 2011, and July 21, 2011. Def.'s Resp. in Opp'n to Pl.'s Mot. Partial Summ. J. 9, ECF No. 22. All three claim notices included a "Notice to Worker" packet. *See supra* note 1. This Court declines to consider the July 21, 2011 letter. That letter, dated July 21, 2011, was received *after* plaintiff's reinstatement request period expired. *See* Decl. of Sarah E. Ames 59–61, ECF No. 19-1; ORS § 659A.043(3)(E). As to the remaining letters, plaintiff does not dispute the legal accuracy of the included "Notice to Worker" packet.

As an initial matter, "[i]t is plaintiff's obligation to request reinstatement." *Manesh*, 2007 WL 539474, at *4; *see also* ORS § 659A.043(1); OAR 839-006-0130(5); OAR 839-006-0150(2). It "was not incumbent upon [defendant] to assume responsibility for ensuring that [plaintiff] return to work, or to offer [her] a position." *LaFord*, 2004 WL 1774531, at *7. However, when an employer does affirmatively act, that employer is not authorized to undermine the main purpose of the law. *See, e.g.*, *Williams*, 298 Or. at 512–13 ("The right to demand reinstatement survives any interim discharge occurring before the worker is entitled, under the terms of the statute, to assert that statutory right. Otherwise the statutory right . . . could be so readily circumvented . . . ."); *see also Wilson v. Tarr, Inc.*, No. CV–99–1412–HU, 2000 WL

19 – OPINION AND ORDER

1292590, at *11 (D. Or. Sept. 8, 2000) ("[I]t is preposterous to think that the law would require her to show up on July 3, 1998, to 'claim' her 'reinstatement' rights when she had already been told that the purchasing agent position was no longer hers.").

Defendant, through Cunningham, informed plaintiff via telephone conversation and termination letter that she "may" reapply for her former position on a competitive basis. *See* Pl.'s Decl. of Counsel 22, ECF No. 13-1 ("You will be considered, along with other external applicants, for any open positions that you are qualified for at the time of your application."). This correspondence mischaracterized plaintiff's reinstatement rights and placed her on an equal footing with all other applicants. Such correspondence, even if buttressed by a previous accurate characterization of the law, constitutes a manipulation, that if unchecked, "permits an employer to vitiate the mandate of [ORS 659A.043] and to thwart the broader legislative scheme." *Shaw*, 297 Or. at 255. Defendant cannot provide general, but accurate statements of law, *see, e.g.*, Decl. of Sarah E. Ames 63, ECF No. 19-1. ("*In most cases*, the Oregon Civil Rights Law requires companies . . . to reinstate a permanent worker when the worker's doctor . . . has approved return to regular work . . . ." (emphasis added)), and then contemporaneously with termination, provide specific, mischaracterizations of the law. Defendant, having sent such correspondence, made it known to plaintiff that *reinstatement* would not be considered . . . and that an actual demand would therefore be "futile."[10] Accordingly, plaintiff is GRANTED summary judgment on her claim under ORS § 659A.043.

## CONCLUSION

---

[10] Defendant argues that plaintiff may have been rehired on a competitive basis. *See* Mem. in Supp. of Def.'s Mot. Summ. J. 12, ECF No. 17. However, even had plaintiff been hired on a competitive basis, such a hiring decision would not constitute *reinstatement* as articulated under Oregon law.

20 – OPINION AND ORDER

For these reasons, plaintiff's motion for partial summary judgment, ECF No. 12, is

GRANTED IN PART and DENIED IN PART, and defendant's motion for summary judgment,

ECF No. 16, is GRANTED IN PART and DENIED IN PART.


IT IS SO ORDERED.


DATED this 12th day of June, 2014.


_____/s/ Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**

21 – OPINION AND ORDER